STATE, EX REL. EMMA C. JOHNSTON, RELATOR, V. SILAS R. BARTON, AUDITOR, RESPONDENT.

FILED JUNE 25, 1909.   No. 16,205.

States: APPROPRIATIONS. The state public school for dependent children referred to in chapter 69, laws 1909, is identical with the "Home for the Friendless," and the appropriations made by the legislature for said school are specific appropriations for the support of said institution, whether described as the Home for the Friendless or the State Public School.

ORIGINAL application for writ of mandamus to compel respondent to issue a warrant in payment of wages due employees of the Home for the Friendless. *Writ allowed unless respondent issue a warrant within ten days.*

*Clark & Allen,* for relator.

*William T. Thompson, Attorney General,* for respondent.

ROOT, J.

The early history of the Home for the Friendless may be found in *Society of the Home for the Friendless v. State,* 58 Neb. 447. The legislature during its thirty-first session repealed sections 4, 5 and 6 of chapter 35 of the Compiled Statutes of Nebraska, and provided for a state public school for dependent children to be located at the Home for the Friendless. Laws 1909, ch. 69. There is no emergency clause to this act, and it will not become effective until July 1, 1909. The appropriations made by the legislature in 1907 for maintenance of the Home for the Friendless and the payment of its officers terminated April 1, 1909. The legislature in 1909 did not make an appropriation referring in so many words to the Home for the Friendless, but did provide in the appropriation made for the current expenses of the state government for the years ending March 31, 1910, and March 31, 1911,

for the maintenance of said state public school. Provision is thereby made for employees' wages, for general repairs, for school supplies and traveling expenses, and for the "care of indigent women now residents of the institution," board, clothing and care of children placed in private homes, etc. In the bill appropriating money for the payment of the salaries of state officials for the biennium commencing April 1, 1909, may be found items for the payment of salaries for the officers contemplated for said school. Each of said appropriations carried an emergency clause.

The auditor has allowed a claim for wages due employees of the Home for the Friendless for the month of April, 1909, but refuses to draw a warrant therefor on the ground that the legislature did not make any appropriation for the support of said institution, and justifies his conduct by reference to section 22, art. III of the constitution, which states: "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, * * * and no money shall be diverted from any appropriation made for any purpose or taken from any fund whatever, either by joint or separate resolution." The appropriations considered are specific, each item therein referring to a definite subject. The legislature evidently intended to change the name but continue the institution of the Home for the Friendless. The statute creating the state public school does not refer to adult dependents, but the general appropriation bill does appropriate money for the support of indigent women now resident at that institution. It is incredible that the legislature intended to leave the dependent children and aged women in the Home for the Friendless without means of support for three months, and expected the employees and officers necessary for the transaction of the business of that institution to labor for the state three months without compensation, or, in default of such gratuitous services, that the institution should become a derelict during the second quarter of 1909. The

appropriations for said school, with the exception of the item for the placing-out agent, whose office is created by ch. 69, laws 1909, are identical as to officials and amounts with the appropriations made by the 1907 legislature for the Home for the Friendless. It certainly was not the intention of the legislature that the superintendent, matron, physician, head teacher, nurse and engineer in the state public school should receive 24 months' salary for 21 months' work, and yet such will be the case if respondent's theory be adopted. The appropriations are for the biennium, and yet, because the change in the name of the institution will not become effective till July 1, respondent reasons that the money appropriated cannot be used in 3 out of 24 months of the biennium. It is clear that the legislature appropriated money to maintain the institution known as the Home for the Friendless, which subsequent to July 1, 1909, will be described as the State Public School for Dependent Children.

The auditor under the circumstances was justified in not acting unless advised by the court that it was his duty to do so. If within ten days of the filing of this opinion respondent signs the warrant referred to in the application, the writ will not issue and the costs' will be taxed to relator; but, if he fails to do so, a peremptory writ will at the end of said ten days issue as prayed for and relator will recover her costs.

JUDGMENT ACCORDINGLY.

ROSE, J., dissenting.

I concur in the spirit of kindness in which the writ is allowed, but dissent from the propositions of law on which the judgment is based. Relator is superintendent of the Home for the Friendless, and as such applied for a peremptory writ of mandamus to compel the auditor of public accounts to issue a warrant on the state treasurer for $428 to pay the wages of the employees of that insti-

tution for the month of April, 1909. The auditor approved relator's voucher, because the employees rendered the services for which compensation is demanded, but declined to issue a warrant for want of an appropriation. Under the name of the "Home for the Friendless" the legislature at its last session made no appropriation for the employees of that institution. In the act making appropriations for current expenses of the state government for the present biennium, there is, however, an appropriation in the following language: "For State Public School at Lincoln: Employees' wages, $6,500." Though this item was appropriated for the "State Public School at Lincoln," an institution not now in existence, the auditor of public accounts is directed to draw a warrant against it to pay wages of employees at the Home for the Friendless for the month of April. The justification for this order, as announced in the opinion of the court, is that legislative appropriations for the State Public School at Lincoln are specific appropriations for the Home for the Friendless. This conclusion, as I understand the statutes, is wholly unwarranted. The statutes themselves do not say that the institutions are identical, that the superintendent of the Home for the Friendless is the superintendent of the State Public School, or that the employees of one institution are employees of the other. Except by mere inference from the pleadings, there is nothing in the record to show such facts. The purpose of the new legislation was to change the existing order of things at the Home for the Friendless. The new act to which the court adverts in the opinion shows that the name, purpose and management of the old institution are to be changed. Formerly the mission of the Home for the Friendless was to aid and support destitute and dependent women and children. In describing its purpose Judge SULLIVAN in *Society of the Home for the Friendless v. State*, 58 Neb. 447, said: "The home contemplated by the legislature was a physical home—a place where the unfortunates of society, the jetsam and flotsam of life's

restless sea, might find a temporary refuge, clothing and food, and shelter and rest."

One of the declared purposes of the new act is to change the institution from a home to a school. This is shown by the title, which is as follows: "An act providing for the creation and location of a state public school for dependent children and providing for the government of the same, and providing for the care and custody of all the dependent children within the state, and repealing sections four (4), five (5) and six (6) of chapter 35 of the Compiled Statutes of Nebraska." Laws 1909, ch. 69. This title limits to dependent children the benefits of the state public school to the exclusion of the aged women now in the Home for the Friendless. For them no provision is made in the new act. The first section is as follows: "There is hereby created and established a state public school for dependent children to be located at the Home for the Friendless in the city of Lincoln, which said school shall have charge of all the dependent children within the state as herein defined and provided."

The State Public School is thus located at the Home for the Friendless, but neither the section quoted nor any other provisions of the act abolishes its present statutory name or repeals that part of the original act establishing the original home. The board of public lands and buildings, in so far as it now has control of dependent children, will be superseded by the governor. In an least three material respects, therefore, the State Public School will differ from the Home for the Friendless: (1) The names of the institutions will be different. (2) Aged and dependent women will be excluded from the State Public School under the provisions of the act creating it, though they found at the old home "a temporary refuge, clothing and food, and shelter and rest." (3) In so far as the institution protected and controlled dependent children, the board of public lands and buildings will be superseded by the governor. The recent legislation will change the name, purpose and management of the Home for the

Friendless. It will put into the hands of the governor power to change the officers and employees. The general appropriation bill, which contains items for the current expenses of the State Public School, and the salary bill, which contains items for the salaries of officers of the same institution, show that both bills were drawn with reference to the changed conditions of the institution, and that the legislature intended that those funds should be drawn under the new management only. It was within the power of the legislature to abandon the Home for the Friendless, to change the character of the institution, or to suspend its functions by failure to make appropriations. The intention to preserve its identity, to continue its functions, or to make appropriations for its support can only be found in the language of legislative enactments. I do not find such intentions in existing legislation. The making of appropriations for state institutions is within the exclusive province of the legislature. The intentions of the lawmakers in exercising that power must be determined from their language. The courts can neither supply intentions of the legislature nor add language to legislation. The appropriation for the State Public School for the entire biennium may indicate a legislative intention to pass with an emergency clause the act creating that institution, and thus make the law effective upon its approval by the governor, but it does not show a purpose to appropriate money for employees at the Home for the Friendless for the month of April. In my judgment the auditor properly refused to issue the warrant on the ground that there was no appropriation to pay it within the meaning of the constitutional provision that "no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law." No specific appropriation was made under the head of the "State Public School at Lincoln" to pay the wages of the present employees at the Home for the Friendless for the month of April, 1909. Strict adherence to the constitutional provision quoted is necessary to the proper fiscal

management of the state government. I fear the precedent established will be cited in the future to justify the misapplication of public funds and the wrongdoing of public officers.